IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GREGORY PERRY, | ) | |
| ID #1191672 | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 3:19-CV-2611-N (BH) |
| | ) | |
| STATE OF TEXAS | ) | |
| CORPORATION, et al., | ) | |
| Defendants. | ) | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings and applicable law, the plaintiff's claims should be **DISMISSED**.

## I. BACKGROUND

Gregory Perry (Plaintiff), a *pro se* Texas prisoner, filed this suit on November 4, 2019, against "the State of Texas Corporation" (Texas); the Texas Governor (Governor); the Texas Attorney General (Attorney General); the Dallas County District Attorney (District Attorney); and the Warden of the unit where he is imprisoned (Warden) (collectively, Defendants). (doc. 2 at 3.)

Plaintiff's complaint claims that Texas, Governor, Attorney General, and District Attorney failed to oversee and supervise the Dallas District Attorney's Office, resulting in his false imprisonment based on a 2002 aggravated robbery conviction. (*See id.* at 4; *see also* doc. 14 at 67-68); https://inmate.tdcj.texas.gov/InmateSearch/viewDetail.action?sid=03794525 (confirming that Plaintiff is still imprisoned for the 2002 conviction) (last visited February 22, 2022).[2]

In an 82-page response to a Magistrate Judge's Questionnaire to obtain more information

---

[1] By *Special Order No. 3-251*, this *pro se* prisoner case has been automatically referred for full case management.

[2] Plaintiff previously filed a federal petition for a writ of habeas corpus challenging his 2002 conviction, which was denied as time-barred. *See Perry v. Director*, 3:15-CV-1127-L-BF (N.D. Tex.), docs. 20, 24, 25.

about his claims, Plaintiff elaborates that the United States Constitution is a contract to which he is a party along with Defendants. He claims that Defendants, themselves or through superiors or subordinates, violated the contract, and, giving his pleadings the most liberal construction, he asserts the following claims:

- That Governor, Attorney General, District Attorney, Warden, and Texas violated Article I, Section 8, Clauses 4 and 6 of the Constitution by failing to collect debts owed to Plaintiff and by failing to punish the counterfeiting of securities, including the bond in his underlying criminal case. (*See id.* at 2, 20, 37, 53, 64-65.)

- That Governor, Attorney General, District Attorney, Warden, and Texas have failed, in contravention of Article I, Section 8, Clause 10 of the Constitution, to "define and punish Piracies and Felonies committed on the high seas, and Offences against the law of nations." (*See id.* at 5, 23, 41, 65.)

- That Governor, Attorney General, and District Attorney violated Article I, Section 10 of the Constitution by emitting a bill of credit in Plaintiff's criminal case in the form of his criminal bond. (*See id.* at 4, 22, 38.)

- That Governor violated Article I, Section 10 of the Constitution by "the creation of a bond against surety's account." (*See id.* at 4.)

- That Governor, Attorney General, District Attorney, and Warden have failed to perform their duties under Article III, Section 2, Clause 1, of the Constitution, as public ministers, and have also engaged in treason. (*See id.* at 6, 24, 41, 42, 56, 57.)

- That Governor, Attorney General, District Attorney, and Warden have failed under Article IV of the Constitution to give full faith and credit to the public acts, records, and judicial proceedings of other states; to ensure that citizens of each state receive all privileges and immunities of citizens in the several states; and to fulfill obligations under the Fugitive Slave Clause. (*See id.* at 7, 8, 9, 25, 26, 30, 42, 57, 58.)

- That Governor, Attorney General, District Attorney, and Warden have violated Article IV, Section 4 of the Constitution, providing that the United States shall protect the states from domestic violence and guarantee a republican form of government. (*See id.* at 10, 40, 44, 59.)

- That Governor, Attorney General, and Warden deprived Plaintiff of access to copies of the Corpus Juris Secundum, Uniform Commercial Codes, Texas Business Code, tax and revenue codes, and insurance codes, depriving him of his ability to petition

the Government for redress. (*See id.* at 2-3, 21, 38, 53.)

- That the removal of the above-referenced books violated Plaintiff's rights under the Tenth Amendment. (*See id.* at 60.)

- That Governor and Attorney General violated Plaintiff's First Amendment rights by curtailing the material he could publish in court pleadings. (*See id.* at 3, 21.)

- That Plaintiff has been held in involuntary servitude in violation of the Thirteenth Amendment. (*See id.* at 12, 28, 45.)

- That Governor violated the Fourteenth Amendment by assuming or paying a debt in aid of insurrection or rebellion against the United States. (*See id.* at 5.)

- That Governor, Attorney General, and District Attorney violated Plaintiff's equal protection and due process rights under the Fourteenth Amendment. (*See id.* at 12, 30, 46.)

- That Governor, Attorney General, and District Attorney allowed the Texas habeas scheme's unconstitutional statute of limitations to "stand." (*See id.* at 3, 21, 38.)

- That Governor, Attorney General, District Attorney, Warden, and Texas violated various federal criminal statutes including 18 U.S.C. §§ 3, 4, 892, and 894; 18 U.S.C. §§ 241, and 242, as well as Texas penal statutes, including Texas Penal Code §§ 7.01, 7.02, 7.22, and 7.23, by, among other things, "the creation and attachment of a bond against surety's account," furthering a general conspiracy, and by issuing extortionate extensions of credit. (*See id.* at 3, 5, 21, 22, 38, 39, 54, 65.)

- That Governor, Attorney General, District Attorney, and Warden violated Plaintiff's rights under the False Claims Act, 31 U.S.C. § 3729 *et seq.* by issuing an extortionate extension of credit in the form of a medical co-pay, by "the creation and attachment of a bond against surety's account," and by allowing Plaintiff to be used as a tax asset "under the bond [Texas] created against [Plaintiff] upon conviction." (*See id.* at 4, 5, 21, 22, 23, 38, 54.)

- That Texas violated the False Claims Act by "allowing agents" to create a "false security/bond" that "attached" to Plaintiff's conviction. (*See id.* at 65.)

- That Governor, Attorney General, and District Attorney violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968 by placing Plaintiff's criminal bond into Texas's possession. *(See id.* at 4, 22, 39.)

- That Governor, Attorney General, and Warden forced Plaintiff to make a medical co-pay, which operates as an unconstitutional bill of attainder. (*See id.* at 5, 23, 54.)

- That no "police report, complaint, or indictment" related to Plaintiff exists, thus nullifying his conviction. (*See id.* at 4, 22, 39.)

- That Plaintiff's criminal conviction is an unconstitutional bill of attainder, in which Plaintiff has supplied "collateral to contract," in the form of his own "flesh and blood." (*See id.* at 4, 22, 40.)

- That Governor has failed to make adequate laws, rules, and regulations to protect Plaintiff and similarly-situated citizens from false imprisonment by violations of his subordinates. (*See id.* at 8.)

- That Governor, Attorney General, and District Attorney have willfully ignored court rulings that a judgment (presumably, Plaintiff's criminal conviction) is void based upon jurisdictional defects or violations of due process. (*See id.* at 13, 31, 48.)

- That Attorney General has failed to keep Plaintiff and other citizens free from false arrest through his failure to control his subordinates—including district attorneys and wardens—and by giving poor legal counsel to Governor and Warden. (*See id.* at 26.)

- That Governor, Attorney General, and District Attorney violated Texas Code of Criminal Procedure article 20.012, a repealed statute, by failing to keep proper records from Plaintiff's criminal proceedings, resulting in his false imprisonment. (*See id.* at 10, 28, 39.)

- That Governor, Attorney General, and District Attorney violated the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 1746, *et seq.* by placing Plaintiff's criminal bond in Texas's "possession" and by failing to protect him. (*See id.* at 4, 7, 25, 39.)

- That Governor, Attorney General, District Attorney, and Warden violated Plaintiff's rights under the Texas Uniform Commercial Code, by failing to protect him and removing the above-referenced books from the law library. (*See id.* at 7, 25, 42, 55.)

- That Governor, Attorney General, District Attorney, and Warden have engaged in insurance fraud in violation of Texas law. (*See id.* at 7, 25, 42, 54.)

- That the bond in Plaintiff's criminal case was not announced through a pleading or in open court, in violation of Texas criminal procedure. (*See id.* at 13, 31, 48.)

- That Attorney General and District Attorney violated their obligations under the Rules of Professional Conduct. (*See id.* at 30, 47.)

(*See* doc. 14.) Plaintiff confirmed in his responses to the questionnaire that he seeks, at least in part,

4

to challenge the validity of his 2002 aggravated robbery conviction. (*See id.* at 67-68.) He also seeks various injunctions and $300,000,000.00 in compensatory damages. (doc. 14 at 15-17, 32-34; doc. 2 at 4.) No process has been issued.

## II. PRELIMINARY SCREENING

Because Plaintiff, a prisoner, has been granted permission to proceed *in forma pauperis*, his complaint is subject to preliminary screening under 28 U.S.C. §§ 1915A and 1915(e)(2), which provide for *sua sponte* dismissal if the Court finds the complaint "frivolous or malicious" or if it "fails to state a claim upon which relief may be granted." Courts follow the same analysis in determining whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) as when ruling on a motion to dismiss under Rule 12(b)(6). *See Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011) (per curium). A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Further, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). A "'pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle*, 429 U.S. at 104-05).

## III. SECTION 1983

Plaintiff filed this action on the standard prisoner civil rights filing form and appears to make claims under 42 U.S.C. § 1983. Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States" and "afford[s] redress for violations of federal statutes, as well as

5

constitutional norms." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under §

1983, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the

Constitution and the laws of the United States; and (2) the deprivation occurred under color of state

law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402

F.3d 545, 549 (5th Cir. 2005).

A.    ***Heck v. Humphrey***

In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the Supreme Court held that to recover

damages for an allegedly "unconstitutional conviction or imprisonment, or for other harm caused

by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff

must prove that the conviction or sentence has been reversed on direct appeal, expunged by

executive order, declared invalid by a state tribunal authorized to make such determinations, or

called into question by a federal court's issuance of a writ of habeas corpus [under] 28 U.S.C. §

2254." Because their success would imply the invalidity of his 2002 aggravated robbery conviction,

which has not been invalidated or otherwise called into question, some of Plaintiff's claims appear

to be *Heck*-barred.

Where the issues are appropriate for early and final determination, however, consideration

of whether *Heck* bars a plaintiff's claims is not required.  *See Patton v. Jefferson Correctional Ctr.*,

136 F.3d 458, 462 n.6 (5th Cir. 1998) (when an action raises an issue of immunity, the court to the

extent it is feasible to do so should determine that issue as early in the proceedings as possible);

*Little v. Board of Pardons and Parole Division*, 68 F.3d 122, 123 (5th Cir. 1995) ("Even if a

complaint is subject to dismissal under *Heck*, it remains appropriate for district courts to resolve the

question of immunity before reaching the *Heck* analysis.")(citing *Boyd v. Biggers*, 31 F.3d 279, 284

6

(5th Cir. 1994)); *Smithback v. Cockrell*, No. 3:01-CV-1658-M, 2002 WL 1268031, at *2 (N.D. Tex. June 3, 2002) (accepting recommendation that "[w]hen a plaintiff seeks relief unavailable under 42 U.S.C. § 1983 or sues individuals or entities who are not proper parties under § 1983, it also seems appropriate to have an early determination of those issues"). Many of Plaintiff's claims raise issues that are appropriate for early determination—such as Eleventh Amendment immunity, failure to name the proper defendant, failure to allege personal involvement under § 1983, and attempting to bring suit under criminal statutes. *See, e.g.*, *Fields v. Nelms*, No. 3:15-CV-0879-P, 2015 WL 3407955, at *1 (N.D. Tex. May 27, 2015) (claims under criminal statutes, even if their success would theoretically undermine outstanding conviction, may be dismissed with prejudice without a *Heck* analysis because there is simply no private cause of action for violations of criminal statutes). Those claims which are appropriate for an early determination, as well as those claims which are unrelated to Plaintiff's criminal conviction, will be addressed first.

**B.    Eleventh Amendment Immunity**

Plaintiff sues Texas and the Governor, Attorney General, District Attorney, and Warden in their official capacities.

An official capacity claim is another way of pleading an action against the entity of which the individual defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The Governor, Attorney General, and Warden are state officials, so a suit against them in their official capacities is the same as a suit against Texas. *See, e.g.*, *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467 (5th Cir. 2020); *McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011); *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("[T]he Eleventh Amendment bars recovering § 1983 money damages from [Texas Department of Criminal Justice] officers in their official capacity.") (further citation

7

omitted).

As for District Attorney, "when acting in the prosecutorial capacity to enforce a state penal law, a district attorney is an agent of the state, not of the county in which the criminal case happens to be prosecuted." *Esteves v. Brock*, 106 F.3d 674, 678 (5th Cir. 1997).

> "The Fifth Circuit has held that Texas district attorneys act as agents of the State for alleged misconduct when instituting criminal proceedings to enforce state law, *Echols v. Parker*, 909 F.2d 795, 801 (5th Cir. 1990); using peremptory challenges during jury selection, *Esteves*, 106 F.3d at 678; denying a prisoner the right to proceed *in forma pauperis* on appeal and the right to self-representation, *Krueger v. Reimer*, 66 F.3d 75, 76-77 (5th Cir. 1995) (per curiam); and in regard to a fifteen month delay in the presentation of the case to a grand jury, *Quinn v. Roach*, 326 F. App'x 280, 282, 292-93 (5th Cir. 2009).

*Estrada v. Healey*, Civil Action No. H-15-0092, 2015 WL 13158514, at *10 (S.D. Tex. June 4, 2015) (footnote omitted). "[A] Texas County may[, however,] be held liable for acts of a district attorney 'for those duties of a prosecutor that are administrative and managerial in nature' if the prosecutor functions as a 'final policymaker' for the county instead of acting in her prosecutorial capacity as an agent for the state." *Id.* (citing *Brown v. Lyford*, 243 F.3d 185, 192 (5th Cir. 2001); *Esteves*, 106 F.3d at 678).

Here, many of Plaintiff's claims against District Attorney appear to be related in some respect to his underlying criminal proceedings. Any claims not fitting into that category do not involve administrative or managerial acts for which District Attorney is the final policy maker. Accordingly, Plaintiff's official-capacity claims against District Attorney are, in effect, claims against Texas. *See*, *e.g.*, *Merisier v. Johnson County, Texas*, CIVIL ACTION NO. 4:20-CV-00520-SDJ-CAN, 2021 WL 1720153, at *4 (E.D. Tex. Feb. 4, 2021), *rep. and rec. accepted* 2021 WL 1709913 (E.D. Tex. Apr. 21, 2021) ("The Fifth Circuit has repeatedly held that district attorneys and assistant district attorneys sued in their official capacities are state officials, not local, for purposes

of liability arising out of their prosecutorial decisions and are therefore entitled to Eleventh Amendment immunity.") (citations omitted).

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens or Subjects of any Foreign State."[3] "This withdrawal of jurisdiction effectively confers an immunity from suit." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). Therefore, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). It is also well-settled that "[t]he Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sch. Sys. of Georgia*, 535 U.S. 613 (2002). Eleventh Amendment immunity applies to both federal and state law claims brought in federal court. *See Raj v. La. State Univ.*, 714 F.3d 322, 328-29 (5th Cir. 2013) (determining that sovereign immunity bars both federal and state law claims brought in federal court); *Robertson v. McShan*, No. 05-20055, 2005 WL 2673516, at *1 (5th Cir. Oct. 20, 2005) (per curium) (finding that Eleventh Amendment immunity divests federal courts of jurisdiction to hear both federal and state law claims).

Although Congress has the power to abrogate immunity through the Fourteenth Amendment, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-76 (2000), and the State may waive its immunity by

---

[3]The terms "state sovereign immunity" and "Eleventh Amendment immunity" are "often used interchangeably to mean the same thing." *Union Pacific R. Co. v. Louisiana Public Service Com'n*, 662 F.3d 336, 340, n.4 (5th Cir. 2011) (citations omitted).

consenting to suit, *AT&T Commc'ns v. BellSouth Telecommns. Inc.*, 238 F.3d 636, 643 (5th Cir. 2001), the State has not waived its immunity by consenting to suit, nor has Congress abrogated the Eleventh Amendment by enacting 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Hines v. Miss. Dep't of Corr.*, No. 00-60143, 2000 WL 1741624, at *3 (5th Cir. Nov. 14, 2000) (per curium). Additionally, "Congress did not abrogate Eleventh Amendment immunity by granting federal courts supplemental jurisdiction over state law claims in 28 U.S.C. § 1367(a)." *Roberson*, 2005 WL 2673516, at *1 (citing *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 541–42 (2002)).[4]

The Eleventh Amendment bars Plaintiff's § 1983 claims against Texas and his official-capacity claims against the Governor, Attorney General, District Attorney, and Warden, and those claims should be dismissed without prejudice.[5]

## C.    **Failure to State a Claim**

Plaintiff also brings § 1983 claims against Governor, Attorney General, District Attorney, and Warden in their individual capacities.

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). "Supervisory officials are not liable under § 1983 for

---

[4]Although the Supreme Court has created an exception from Eleventh Amendment immunity for suits for injunctive or declaratory relief against individual state officials–the *Ex parte Young* exception–it is inapplicable here. To rely upon the *Ex parte Young* exception, the suit must "(1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state, law." *Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020) (citing *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015)). To invoke the *Ex parte Young* exception, the named official must also have a "sufficient connection [to] the enforcement" of the challenged act. *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019). Here, Plaintiff does not seek an injunction related to an ongoing violation of federal law to which any named state defendant has an enforcement connection. (*See generally* doc. 14 at 15-17, 32-24).

[5]Claims barred by sovereign immunity "can be dismissed only under Rule 12(b)(1) and not with prejudice." *Warnock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996).

the actions of their subordinates on any theory of vicarious liability;" they must have been "personally involved in the alleged constitutional deprivation or have engaged in wrongful conduct that is causally connected to the constitutional violation." *Turner v. Lt. Driver*, 848 F.3d 678, 695-96 (5th Cir. 2017).

### 1.    *Article I Claims*

Plaintiff claims that Governor, Attorney General, District Attorney, and Warden, or, some combination of those defendants: (1) violated Article I, Section 8, Clauses 4 and 6 of the Constitution by failing to collect debts owed to him and by failing to punish the counterfeiting of securities; (2) violated Article I, Section 8, Clause 10 by failing to define and "punish piracies and felonies committed on the high seas and offenses against the laws of nations"; (3) violated Article I, Section 10 of the Constitution, which prohibits states from, in pertinent part, emitting bills of credit; and (4) violated Article I Clause 10 by impairing the obligation of contracts.

Plaintiff, however, does not explain how any of the named defendants were personally involved in these alleged constitutional violations or engaged in any wrongful conduct causally connected to them. *See Bennett v. City of Bonham, Texas*, CIVIL ACTION NO. 4:20-CV-00632-RAS_CAN, 2021 WL 2878550, at *4 (E.D. Tex. Apr. 30, 2021), *rec. accepted* 2021 WL 2856640 (E.D. Tex. July 7, 2021) ("As a general rule, to establish liability under § 1983, an individual defendant 'must have been personally involved in the alleged constitutional deprivation or have engaged in wrongful conduct that is causally connected to the constitutional violation.'") (quoting *Turner*, 848 F.3d at 695-96) (citing, in turn, *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008) (footnote omitted)). Plaintiff simply presents a series of legal conclusions without any supporting facts, which is insufficient to state a claim under § 1983. *See Fernandez-Montes v. Allied Pilots*

*Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

As for the Article I, Section 8 claims, these constitutional provisions are enumerations of powers to the United States Congress; by their terms, they impose no affirmative obligations on the state actors that  Plaintiff sued. *See generally* U.S. CONST. ART. 1, § 8.

To the extent that Plaintiff is claiming that the bond in his underlying criminal case was an unconstitutional bill of credit or was a counterfeited security, under Texas law, none of these defendants had anything to do with the amount or timing of the bond. *See Thomas v. Burton*, Civil Action H-19-1044, 2019 WL 13027068, at *2 (S.D. Tex. Mar. 29, 2019) (noting that, under Texas law, the amount of a pretrial bond is regulated by the court, judge, magistrate, or officer taking bail pursuant to Texas Code of Criminal Procedure Art. 17.15—the district attorney does not determine the amount or timing of a pretrial detainee's bond). Finally, Plaintiff does not identify any contract supposedly impaired by a Texas law in contravention of Article I, Section 10. Plaintiff's claims under Article 1 of the Constitution lack merit and should be dismissed.

2.    ***Article III Claims***

Plaintiff appears to claim that Governor, Attorney General, District Attorney, and Warden, or a combination thereof, violated Article III of the United States Constitution by committing treason against the United States. *See generally* U.S. CONST. ART. III §§ 1-3.  To the extent that he is claiming that they should be punished, he lacks standing to make this claim because "in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Lina R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Further, claims of treason cannot be pursued in a civil action, however. *See Florance v. Bush*, No. 3:09-CV-1470-B-BH, 2010 WL 2730615, at *12 (N.D. Tex. May 25, 2010), *rep. and rec. accepted*, 2010 WL

2710665 (N.D. Tex. June 24, 2010).

Plaintiff also asserts that these Defendants violated Article III by failing in their performance as "public ministers." They are not "public ministers" under Article III, however, because that term applies to foreign officials. *See*, *e.g*, *U.S. v. Coplon*, 84 F.Supp. 472, 477 (S.D.N.Y. 1949) ("The term public minister generally denotes an emissary of one sovereign to another sovereign sent to perform diplomatic duties.") (citations omitted). Any claims that Plaintiff makes under Article III lack merit and should be dismissed.

### 3.    *Article IV Claims*

Plaintiff claims that Governor, Attorney General, District Attorney, and Warden, or a combination of those Defendants, violated Article IV of the United States Constitution by (1) failing to give full faith and credit to the public acts, records, and judicial proceedings of other states; (2) failing  to ensure that Plaintiff received all privileges and immunities of the citizens of the several states; (3) failing  to fulfill obligations under the Fugitive Slave Clause; and (4) by failing to protect the states from domestic violence and to guarantee a republican form of government. Again, he fails to explain how any of the named defendants were personally involved in these alleged constitutional violations or engaged in any wrongful conduct causally connected to them. *See Bennett*, 2021 WL 2878550, at *4 (citations omitted). Instead, he  alleges broad constitutional violations without any supporting facts, which is  insufficient to state a claim under § 1983. *See*, *e.g*, *Piraino v. U.S. Postal Service*, 69 F.Supp.2d 889, 893 (E.D. Tex. 1999).

In addition, the "Full Faith and Credit Clause does not give rise 'to a right vindicable in a § 1983 action.'" *Brown v. City of Chicago*, 19 C 2411, 2020 WL 489522, at *2 (N.D. Ill. Jan. 30, 2020) (citing *Adar v. Smith*, 639 F.3d 146, 153 (5th Cir. 2011)). Nor does the Fugitive Slave Clause,

which was abolished by the Thirteenth Amendment. *See* U.S. CONST. AMEND. XIII. Finally, Article 4, Section 4, which charges the United States with guaranteeing each state a republican form of government and protecting them against invasion, by its plain terms applies to the United States—not the state officials that Plaintiff sued. *See* U.S. CONST. ART. 4 § 4.

Plaintiff's Article IV claims lack merit and should be dismissed.

### 4.    *First Amendment Claims*

Next, Plaintiff claims that Governor, Attorney General, and Warden deprived him of access to copies of the Corpus Juris Secundum, Uniform Commercial Codes, Texas Business Code, tax and revenue codes, and insurance codes.

### a.    *Denial of Access to the Courts*

To the extent that Plaintiff is claiming that he was denied his right to access the courts, the claim fails for multiple reasons. First, his allegations are conclusory, and he does not allege that these Defendants were personally involved in this alleged constitutional violation or engaged in any wrongful condut causally connected to it. *See Bennett*, 2021 WL 2878550, at *4 (further citations omitted); *see also Fernandez-Montes*, 987 F.2d at 284.

Second, Plaintiff fails to allege an actual injury. The First Amendment provides, in pertinent part, that "Congress shall make no law...abridging...the freedom of speech...or the right to the people...to petition the Government for a redress of grievances." U.S. CONST. AMEND I. "The Fifth Circuit has held the right of access to legal materials is simply an offshoot of the right to access the court, because the Court's main concern is protecting the ability of the inmate to prepare a petition or complaint." *Whitlock v. Stephens*, CIVIL ACTION NO. 5:14cv94, 2016 WL 11474208, at *8 (E.D. Tex. Oct. 5, 2016), *rep. and rec. accepted* 2016 WL 7155292 (E.D. Tex. Dec. 8, 2016) (citing

14

*Mann v. Smith*, 796 F.2d 79, 83 (5th Cir. 1986) (citing, in turn, *Bounds v. Smith*, 430 U.S. 817, 828, n.17 (1977)). As the Fifth Circuit has explained:

> Prisoners have a constitutional right to access the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1976). However, the Supreme Court's decision in *Bounds* did not establish that prisoners have a right to a law library or legal assistance. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996). Rather, "prison law libraries and legal assistance programs are not ends in themselves, but only the means for assuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id.* at 351 (quoting *Bounds*, 430 U.S. at 825). Therefore, a prisoner alleging a violation of *Bounds* must allege an actual injury.

*Mendoza v. Strickland*, 414 F. App'x 616, 618 (5th Cir. 2011) (internal citations altered). "A plaintiff complaining of loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief must describe the predicate claim [i.e. the underlying case for which access to the courts is sought] well enough to show the claim is not frivolous and the arguable nature of this claim amounts to 'more than a hope.'" *Whitlock*, 2016 WL 11474208, at *8 (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (further citation omitted)).

Here, Plaintiff does not point to any lawsuit or appeal that was adversely affected by the alleged removal of the referenced law books, much less a lawsuit or appeal that has arguable merit. For at least these reasons, he fails to state an access-to-the-courts claim.[6]

       *b.*    *Free Speech*

Plaintiff also claims that Governor and Attorney General violated his First Amendment right to free speech by prohibiting what he could publish in court pleadings. His allegations are

---

[6]Although unclear, Plaintiff also seems to suggest that the removal of the law books violates his rights under the Tenth Amendment. (*See* doc. 14 at 60.) Any such claim lacks merit because the Tenth Amendment is "neither a source of federal authority nor a fount of individual constitutional rights." *Stone v. City of Prescott*, 173 F.3d 1172, 1175 (9th Cir. 1999)

conclusory, and he does not allege how these defendants were personally involved with the supposed suppression of speech or engaged in wrongful action causally connected to the supposed violation. *See Bennett*, 2021 WL 2878550, at *4 (further citations omitted); *see also See Fernandez-Montes*, 987 F.2d at 284.

Further, Plaintiff does not identify the contents of the supposedly-curtailed speech, precluding any determination of whether it is deserving of First Amendment protection. *See*, *e.g.*, *U.S. v. Alvarez*, 567 U.S. 709, 717 (2012) (listing categories of speech susceptible to content-based restrictions). Nor does he explain how, specifically, the speech was curtailed. Without these fundamental allegations, he fails to show that his First Amendment rights were violated.

### 5. *Fourteenth Amendment Claims*

Plaintiff appears to make a claim under the Fourteenth Amendment, because he references the Due Process Clause, as well as the Equal Protection Clause.

In pertinent part, the Fourteenth Amendment states that no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV § 1. To the extent Plaintiff is claiming a due process error in relation to his criminal conviction, as discussed below, *Heck* bars his claim. To the extent the due process claim refers to something else, it fails because Plaintiff has not alleged a protected liberty or property interest that Defendants violated. *See Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1216 (10th Cir. 2003) (internal quotation and citation omitted). Likewise, his vague, fleeting references to equal protection are too conclusory to support relief.

Plaintiff also suggests that Defendants violated the provision of the Fourteenth Amendment

16

that prohibits states from assuming or paying any debt or obligation incurred in aid of insurrection or rebellion against the United States. *See* U.S. CONST. AMEND XIV § 4. This allegation is conclusory and does not specify any debt that Texas has assumed or paid related to insurrection, rebellion, or slavery, much less that any named Defendant took personal action connected with it.

Any Fourteenth Amendment claim lacks merit and should be dismissed.

### 6.    Claims Related to the Texas Habeas Statute

Next, Plaintiff claims that Governor, Attorney General, and Warden violated his constitutional rights by allowing the Texas state habeas statute of limitations to "stand" as constitutional. The Texas habeas scheme *does not* include a statute of limitations for non-death-penalty writs, as would be applicable to Plaintiff's aggravated robbery conviction. *See* TEX. CODE. CRIM. PROC. ART. 11.07 (setting forth procedure for writ of habeas corpus in Texas state courts). This claim lacks merit and should be dismissed.

### 7.    Criminal Statutes and Bill of Attainder

Next, Plaintiff alleges that Governor, Attorney General, District Attorney, and Warden violated various federal criminal statutes, including 18 U.S.C. §§ 3, 4, 241, 242, 892, and 894.

Criminal statutes cannot be enforced in a civil action. *Florance v. Buchmeyer*, 500 F.Supp.2d 618, 626 (N.D. Tex. 2007). "Private citizens do not have the right to bring a private action under a federal criminal statute." *Sappore v. Arlington Career Inst.*, No. 3:09-CV-1671-N, 2010 WL 446076, at *2 (N.D. Tex. Feb. 8, 2010) (citing *Pierre v. Guidry*, 75 F. App'x 300, 301 (5th Cir. 2003) (per curiam)); *see also Pham v. Tex. State Bd. of Dental Exam'rs*, No. A-17-CV-1008 RP, 2018 WL 3978371, at *2 n.2 (W.D. Tex. Aug. 17, 2018) (recognizing that there is no private right of action under 18 U.S.C. § 1001 because it is a criminal statute); *Smith v. City of Princeton, Tex.*,

No. 4:17-CV-85-ALM-CAN, 2017 WL 9285515, at *3 (E.D. Tex. Oct. 31, 2017) (citing *de Pacheco v. Martinez*, 515 F.Supp.2d 773, 787 (S.D. Tex. 2007) ("18 U.S.C. § 1956 does not create a private cause of action" because it is a criminal statute); *Hussein v. Gates*, 657 F.Supp.2d 77, 81 (D.D.C. 2009) (holding that § 241 is a criminal statute that does not expressly create a private right of action upon which a plaintiff may sue a defendant); *Furman v. Compucom Sys., Inc.*, No. 3:03-CV-1433L, 2004 WL 1672314, at *8 (N.D. Tex. July 23, 2004) (holding that 18 U.S.C. § 4 does not grant a private right of action for a civil litigant to initiate a lawsuit under this statute); *Rockefeller v. U.S. Court of Appeals Office*, 248 F.Supp.2d 17, 23 (D.D.C. 2003) (holding that as a criminal statute, § 242 does not convey a private right of action). Any claims under any criminal statute should be dismissed for failure to state a claim.

Plaintiff also appears to claim that requiring him to make a medical co-payment amounts to an unconstitutional bill of attainder pursuant to Article 1, Section 10, Clause 1 of the Constitution, which prohibits states from passing bills of attainder. *See* U.S. CONST. ART. I § 10, CL. 1. A "bill of attainder" is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 468 (1977). "[T]he Bill of Attainder Clause in Article 1, section 10 of the Constitution, as defined by the Supreme Court, prohibits States from enacting such laws, just as Article 1, section 9 prohibits Congress from adopting such legislation." *Reynolds v. Quiros*, 990 F.3d 286, 295 (2d Cir. 2021). Plaintiff has not identified any legislative act that could qualify as a bill of attainder in relation to a medical co-payment; this claim lacks merit and should be dismissed.

### 8. *Habeas Relief*

To the extent that Plaintiff also seeks a release from confinement (*see* doc. 2 at 4),  this form

of relief is not cognizable under § 1983. *See Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) ("[A] prisoner in state custody cannot use a § 1983 action to challenge 'the fact or duration of his confinement.'") (quoting *Preisler v. Rodriguez*, 411 U.S. 475, 498 (1973)). It is only cognizable through a habeas action. Any claims for habeas relief should be dismissed for failure to state a claim.

## IV. FALSE CLAIMS ACT

Plaintiff claims that Governor, Attorney General, District Attorney, and Warden violated his rights under the False Claims Act, 31 U.S.C. § 3729 *et seq*., by issuing an extortionate extension of credit in the form of a medical co-pay and allowing him to be used as a tax asset "under the bond [Texas] created against [Plaintiff] upon conviction." Any claims under False Claims Act against Defendants in their official capacities are barred by the Eleventh Amendmentt. *See*, *e.g.*, *Miller v. Bunce*, 60 F.Supp.2d 620, 624 (S.D. Tex. 1999). To the extent the False Claims Act claim is against Defendants in their individual capacities, Plaintiff's allegations are insufficient to state a claim.

First, as noted, these Defendants did not set Plaintiff's bond, so, to the extent his False Claims Act claim is premised upon the setting of his criminal bond, it fails.

Second, the False Claims Act is inapplicable. *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 411 (2005) (citing 31 U.S.C. § 3729(a)). "The Act permits either the Attorney General or a private party to initiate a civil claim alleging fraud on the United States." *Davis v. City of Charlottesville Department of Social Services*, Civil Action NO. 3:19CV00053, 2019 WL 4889740, at *2 (W.D. Va. Oct. 3, 2019) (citing 31 U.S.C. § 3730). "To state a claim under the Act, the *qui tam* plaintiff, or relator, must allege sufficient facts to establish: (1) 'that the defendant made a false statement or engaged in a fraudulent course of conduct'; (2) that 'such statement or conduct was made or carried out with the requisite scienter'; (3) that 'the

19

statement or conduct was material'; and (4) that 'the statement or conduct caused the government to pay out money or to forfeit money due.'" *Id.* (quoting *U.S. ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 913 (4th Cir. 2003)).

Plaintiff fails to allege sufficient facts to meet any of those elements here, and his False Claims Act claim should be dismissed.[7]

## V. RICO

Plaintiff claims that Governor, Attorney General, District Attorney, and Warden violated his rights under the RICO Act. Any RICO claim against Defendants in their official capacities is barred by the Eleventh Amendment. *See*, *e.g.*, *Gaines v. Texas Tech University*, 956 F.Supp. 886, 889 (N.D. Tex. 1997). Any RICO claim against them in their individual capacities fails on the merits. RICO, 18 U.S.C. § 1964(c), creates a civil cause of action for a "person injured in his business or property by reason of a violation of section 1962." *Brown v. Protective Life Ins. Co.*, 353 F.3d 405, 407 (5th Cir. 2003). In their simplest terms, the four subsections of 18 U.S.C. § 1962 provide that:

(a)    a person who has received income from a pattern of racketeering activity cannot invest that income in an enterprise;

(b)    a person cannot acquire or maintain an interest in an enterprise through a pattern of racketeering;

(c)    a person who is employed by or associated with an enterprise cannot conduct the affairs of the enterprise through a pattern of racketeering activity;

(d)    a person cannot conspire to violate subsections (a), (b), or (c).

*See Abraham v. Singh*, 480 F.3d 351, 354-55 (5th Cir. 2007); *Crowe v. Henry*, 43 F.3d 198, 203 (5th

---

[7]Plaintiff also brings a False Claims Act claim against Texas, the Eleventh Amendment bars a qui tam plaintiff from instituting a suit against a state unless the United States has actively intervened in the action, which has not occurred here, so any such claim should be dismissed without prejudice. *See U.S. v. Texas Tech University*, 171 F.3d 279, 294 (5th Cir. 1999).

Cir. 1995). All four subsections have three common elements: "1) a person who engages in 2) a pattern of racketeering activity [or collection of unlawful debt], 3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Crowe*, 43 F.3d at 204 (alteration in original). Plaintiff's wholly conclusory allegations fail to establish the elements of RICO claim against Defendants in their individual capacities, any RICO claim should be dismissed.

## VI. *HECK*-BARRED CLAIMS

Finally, Plaintiff's remaining federal claims are barred by *Heck*.

*Heck* bars any tort claim that "would necessarily imply the invalidity" of a plaintiff's conviction or sentence. *Hainze v. Richards*, 207 F.3d 795, 798 (5th Cir. 2000). Plaintiff claims that: (1) no "police report, complaint, or indictment" related to Plaintiff exists, nullifying his conviction; (2) Plaintiff's criminal conviction is an unconstitutional bill of attainder, in which he has supplied "collateral to contract" in the form of his own "flesh and blood"; (3) Governor has failed to make adequate laws, rules, and regulations to protect Plaintiff and similarly-situated citizens from false imprisonment; (4) Attorney General  has failed to keep Plaintiff and other citizens free from false arrest through his failure to control his subordinates—including district attorneys and wardens—and by giving poor legal counsel to Governor; (5) Governor, Attorney General, and District Attorney violated Texas Code of Criminal Procedure article 20.012, a repealed statute, by failing to keep proper records from Plaintiff's criminal proceedings, resulting in his false imprisonment; and (6) Governor, Attorney General, and District Attorney have willfully ignored court rulings that a judgment (presumably, Plaintiff's still-outstanding criminal conviction)  is void if based upon jurisdictional defects or violations of due process.

Success on these claims would imply the invalidity of Plaintiff's 2002 criminal conviction,

which he admits has not been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus [under] 28 U.S.C. § 2254." *Heck*, 512 U.S. 486-87; *see also Collins v. Louisiana*, Civil Action NO. 6:08-1683, 2009 WL 1421320, at *3 (W.D. La. May 20, 2009) ("Collins seeks monetary damages from all of the defendants for alleged wrongdoing associated with his criminal conviction. A judgment in Collin's favor on his false arrest, false imprisonment and ineffective assistance of counsel claims would necessarily imply the invalidity of his criminal conviction and the sentence imposed therein."); *Jackson v. Terrell Police Dep't*, Civil Action No. 3:09-CV-2307-G (BH), 2010 WL 183935, at *2 (N.D. Tex. Jan. 19, 2010) (finding that *Heck* barred false imprisonment claim, noting that "[b]ecause an essential element of a § 1983 claim of false imprisonment is that the imprisonment be illegal or without legal authority, *see Harper v. Merckle*, 638 F.2d 848, 860 (5th Cir. 1981), granting relief on this claim would necessarily imply the invalidity of that conviction...") (citing *Perry v. Holmes*, 152 F. App'x 404, 405 (5th Cir. 2005) (per curiam); *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007)).

## VII. STATE LAW CLAIMS

Plaintiff appears to assert claims predicated upon Texas law, specifically, that Governor, Attorney General, District Attorney, Warden, and Texas, or some combination thereof: (1) violated penal statutes, including Texas Penal Code §§ 7.01, 7.02, 7.22, and 7.23; (2) violated the Texas Deceptive Trade Practices Act (DTPA), Tex. Bus, & Com. Code § 1746, *et seq.,* by placing Plaintiff's criminal bond in Texas's "possession"; (3) engaged in insurance fraud in violation of Texas law; (4) violated Plaintiff's rights under the Texas Uniform Commercial Code, by failing to protect him; (5) violated Texas criminal procedure by not announcing his bond in a pleading or in

open court; and  (6) that Attorney General and District Attorney violated the Texas Disciplinary Rules of Professional Conduct.

Under § 1367(a), federal courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." In essence, § 1367(a) grants the courts the "power to hear a state law claim under pendant or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus of operative fact." *McKee v. Texas Star Salon, LLC*, No. 3:15-CV-1162-D, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007) (citations omitted); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 727 (1996).

When all federal claims are dismissed prior to trial, the general rule in this circuit is to decline exercising jurisdiction over the remaining state law claims. *LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986); *see also* 28 U.S.C. § 1367(c)(3).[8] This rule is "neither mandatory nor absolute." *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (citation omitted). Rather, district courts are given wide discretion in deciding whether to exercise jurisdiction under such circumstances. *See Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000); *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993); *see also United Mine*

---

[8]Under 1367(c), a court may decline to exercise supplemental jurisdiction over a state claim if:

    (1)      the claim raises a novel or complex issue of law,

    (2)      the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

    (3)      the district court has dismissed all claims over which it had original jurisdiction, or

    (4)      in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

*Workers*, 383 U.S. at 726 ("[P]endant jurisdiction is a doctrine of discretion, not of [a] plaintiffs right."). In exercising this discretion, courts should consider issues of judicial economy, convenience, and fairness to the litigants. *LaPorte Constr. Co.*, 805 F.2d at 1257. However, "no single factor is dispositive." *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008).

Here, the factors weigh in favor of retaining jurisdiction over Plaintiff's state law claims because they arise from the same "common nucleus of operative facts" as his federal claims. Requiring Plaintiff to litigate his claims in state court would "necessarily require consideration by two district courts of the same operative fact[s]" and the "same legal issues." *See McKee*, 2007 WL 2381246, at *4. Given that Plaintiff's claims are meritless, allowing him to file suit in state court would impose unnecessary expenses on the court system and the parties involved. *See McCall v. Peters*, No. 3:00-CV-2247-D, 2003 WL 21488211, at *12 (N.D. Tex. May 11, 2003), *aff'd*, 108 F. App'x 862 (5th Cir. 2004) (in determining whether to exercise pendant or supplemental jurisdiction, the court may consider factors such as the amount of time and resources spent adjudicating a case).

To the extent the state law claims are asserted against Texas and the other Defendants in their official capacities, the Eleventh Amendment bars them. *See*, *e.g.*, *McKinley v. Abbott*, 643 F.3d 403, 405 (5th Cir. 2011) (noting that the Eleventh Amendment bars private citizens from bringing suit against a state in federal court and dismissing the plaintiff's claims under the Texas constitution against Attorney General in his official capacity); *United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union v. Anderson*, No. SA-17-CV-1242-XR, 2018 WL 3017366 (W.D. Tex. June 15, 2018).

To the extent the state law claims are asserted against Defendants in their individual capacities, the Plaintiff's claims premised upon violations of Texas penal statutes should be

dismissed because "[f]ederal courts have repeatedly held that violations of criminal statutes do not give rise to a private cause of action." *Doyon v. United States*, No. A-07-CA-977-SS, 2008 WL 2626837, at *4 (W.D. Tex. June 26, 2008).

Next, Plaintiff claims that Defendants violated DTPA by "placing" his criminal bond in the possession of Texas. (See doc. 14 at 4.) As noted, these Defendants would not have been involved in setting Plaintiff's bond under state law.

As for his insurance fraud claim, the elements of a fraud claim under Texas law are: (1) a material misrepresentation; (2) that was false when made; (3) the speaker knew it was false or made it without knowledge of its truth or falsity; (4) the speaker intended that the representation be relied upon; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff was injured as a result. *See Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 563 n.3 (5th Cir. 2002) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)). Plaintiff has not identified any material misrepresentation or plausibly pleaded facts to establish any other elements of a fraud claim under Texas law.

Plaintiff also claims that Defendants failed to protect him under the Texas Uniform Commercial Code. He has not alleged any commercial relationship to which the Uniform Commercial Code might apply or identified any portion of the same setting out a duty to protect.

Plaintiff alleges that Defendants violated Texas criminal procedure by not announcing his bond in a pleading or in open court. The Texas Code of Criminal Procedure "'does not give rise to a private cause of action'", however. *Coltart v. Texas*, W-19-CA-464-ADA, 2020 WL 5416615, at *8 (W.D. Tex. Aug. 6, 2020) (citing *Douglas v. Anson Fin., Inc.*, No. 2-05-283-CV, 2006 WL 820402, at *5 (Tex. App. –Fort Worth 2006, pet denied)).

Finally, Plaintiff appears to claim that the Attorney General and District Attorney violated the Texas Disciplinary Rules of Professional Conduct. These rules "do not create corresponding legal duties or constitute standards for imposition of civil liability on lawyers." *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 235 F.Supp.2d 549, 598 (S.D. Tex. 2002) (citing *Schatz v. Rosenberg*, 943 F.2d 485, 492 (4th Cir. 1991), *cert denied*, 503 U.S. 936 (1992); Preliminary Statement, Model Code of Professional Responsibility (admonishing that the Code does not attempt "to define standards for civil liability of lawyers for professional conduct"); Section 15 of the Preamble to the Texas Disciplinary Rules of Professional Conduct ("These rules do not undertake to define standards of civil liability of lawyers for professional conduct. Violation of a rule does not give rise to a private cause of action nor does it create any presumption that a legal duty to a client has been breached.").

In conclusion, Plaintiff's state claims are meritless and should be dismissed.

### VIII. OPPORTUNITY TO AMEND

The Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Brynes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs an opportunity to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2.

Leave to amend is not necessary, however, where the plaintiff has already plead his best case. *See Wiggins v. La. State Univ.—Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir.

2017) (citations omitted). A verified questionnaire response allows a plaintiff to plead his or her best case and is a valid way for a *pro se* litigant to amend his complaint. *See Nixon v. Abbott*, 589 F. App'x 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a pro se litigant to develop the factual basis for his complaint."). Because Plaintiff already responded to a questionnaire with an 82-page verified response, he has plead his best case, and leave to amend is not warranted.

## IX. RECOMMENDATION

Plaintiff's claims against Texas and Governor, Attorney General, District Attorney, and Warden in their official capacities should be **DISMISSED** without prejudice under the Eleventh Amendment.

Plaintiff's § 1983 individual-capacity claims that (1) no "police report, complaint, or indictment" related to Plaintiff exists, thus nullifying his conviction; (2) Plaintiff's criminal conviction is an unconstitutional bill of attainder, in which Plaintiff has supplied "collateral to contract," in the form of his own "flesh and blood"; (3) Governor has failed to make adequate laws, rules, and regulations to protect Plaintiff and similarly-situated citizens from false imprisonment; (4) Attorney General has failed to keep Plaintiff and other citizens free from false arrest through his failure to control his subordinates–including district attorneys and wardens–and by giving poor legal counsel to Governor; (5) Governor, Attorney General, and District Attorney violated Texas Code of Criminal Procedure article 20.012, a repealed statute, by failing to keep proper records from Plaintiff's criminal proceedings, resulting in his false imprisonment; and (6) Governor, Attorney General, and District Attorney have willfully ignored court rulings that a judgment (presumably,

Plaintiff's criminal conviction) is void if based upon jurisdictional defects or violations of due process should be **DISMISSED** with prejudice subject to their being asserted again if or when the conditions of *Heck v. Humphrey*, 512 U.S. 477 (1994), are met by Plaintiff.

The remainder of Plaintiff's federal and state claims should be **DISMISSED** with prejudice for failure to state a claim.

**SO RECOMMENDED** on this 4th day of April, 2022.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

28